[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, S.P.G. Associates, Inc., is and was at all times hereinafter mentioned a corporation duly incorporated under the laws of the state of Connecticut with its offices and principal place of business in West Hartford. The corporation is engaged in the business of real estate development, management, consulting and brokerage. Sidney P. Goldstein is the sole shareholder and employee of S.P.G. The defendant, 90 Retreat Avenue Associates, Inc., was at all times pertinent to this case a corporation duly incorporated under the laws of the state of Connecticut with its offices and principal place of business in Newington, Connecticut. The defendant, Philip A. Shelton, was at all relevant times a shareholder in 90 Retreat Avenue Associates, Inc. and its president. The defendant, 90 Retreat Associates, was and is a Connecticut general partnership. The plaintiff, S.P.G. Associates, Inc., will be hereinafter referred to as SPG only. The defendant, 90 Retreat Avenue Associates, Inc., will be referred to as the corporation. Philip Shelton will be referred to as Shelton and the defendant, 90 Retreat Associates, will be referred to as the partnership.
The corporation was incorporated under Connecticut law on or about March 1, 1986. Originally it had three equal shareholders, Shelton and two persons who are not parties to this action; Nelson A. Shub and Malcolm A. Arnold. Shelton and Shub purchased Arnold's shares in the corporation in 1988 and at all relevant times thereafter were equal fifty percent shareholders in the corporation. The agreement between SPG and the corporation became effective March 1, 1986 and was executed on behalf of SPG by Sidney P. Goldstein, president CT Page 470 and on behalf of the corporation by Philip A. Shelton, president. The agreement recites that SPG is a real estate broker-developer and consultant who worked with the developer, 90 Retreat Avenue Associates, Inc., to acquire the land at 90 Retreat Avenue, Hartford, Connecticut and that the developer, i.e., the defendant corporation, was formed for the purpose of constructing and selling a medical office condominium building on that property.
The agreement provides that SPG shall on behalf of the developer and at the cost of the developer work on the design, financing, construction and marketing of the project and specifically that SPG was to obtain at the cost of the developer plans for the construction of the building, market the condominium units, assist the developer in obtaining financing for the project, and, if financing satisfactory for the developer is obtained, proceed to manage and supervise the construction of the project subject to the approval of the developer.
As compensation for its services SPG was to be paid by the developer a consulting fee of $75,000, payable $2,500 on the first day of each month commencing March 1, 1986 through August 1, 1986; $3,000 each month commencing September 1, 1986 through February 1, 1987 and $3,500 commencing March 1, 1987 through February 1, 1988 subject to certain conditions. Those which are pertinent to this case are, if the building is sold to a third party in its entirety prior to the completion of the payout of fees to SPG as provided for in the contract then as of the date of the aforementioned sale no further fees shall be due to SPG pursuant to the contract. Fees would also cease if the project ceased for any reason whatsoever as a result of circumstances beyond the developer's control, but if the project was halted on a temporary basis, payments were to resume upon the resumption of work on the project.
In addition to the consulting fee SPG was to be paid an additional fee equal to five percent of the net cash flow profit derived from the project.
Recognizing that there would be a management contract between the condominium owners association and a representative of the developer from the time of the sale of the first of the condominium units until such time as the CT Page 471 condominium unit owners association made its own determination of who would manage the project the developer agreed that while there was such a management contract in effect under its control, SPG would perform the management services on behalf of the developer and be paid a fee of one dollar per square foot per annum on a monthly basis, but only for the square footage that had actually been sold by the developer to third parties.
On April 25, 1986 the corporation purchased a certain parcel of land located in Hartford known as 84-86-88-90 Retreat Avenue and 119 to 121 Maple Avenue and 111 to 113 Maple Avenue, for which the corporation paid $750,000. Later it purchased a certain parcel of land located at 76-78 Retreat Avenue for which it paid $325,000. All of these properties are referred to collectively as The Retreat Avenue Property. Purchase was financed by funds furnished by Home Bank and Trust Company but was later refinanced with a $1.1 million loan from Central Bank.
SPG performed work for the corporation under the terms of the contract from March 1, 1986 to October 1, 1986 and was paid monthly a total of $17,500 for its services. Work on the project was suspended on or about October 1, 1986 because of depletion of funds. No construction had been commenced and no medical office condominium units had been sold as of that date.
During the latter part of 1987 and early 1988 the corporation approached a number of prospective developers and investigated other approaches to the development of its property. On April 14, 1988 the corporation entered into a contract, a letter agreement, to be followed up by a more detailed contract, with Konover Development Corporation, hereinafter KDC, with respect to the development of the 90 Retreat Avenue property. Pursuant to this contract the corporation was to sell the property to a general partnership which consisted of fifty percent ownership by KDC with a twenty-five percent ownership by Shelton and twenty-five percent by Shub. The sale price was to equal the corporation's cost. No profit was to be realized.
KDC was to be granted the right to be managing partner, responsible for taking all actions and making all decisions pertaining to the project, including but not limited to CT Page 472 development, construction, leasing, financing, refinancing and management of the property.
The fifty percent share of the general partnership owned by KDC was known as 90 Retreat Limited Partnership and was designated a general partner and managing partner. The general partnership was known as 90 Retreat Associates.
On or about September 20, 1988 the corporation transferred the Retreat Avenue property to the general partnership at a purchase price of $1,461,981.74 which equaled the corporation's actual investment in the Retreat Avenue property to date, including acquisition and development costs. This sum was arrived at by negotiation of the parties. Full conveyance taxes were paid at the time of closing. The transfer to the partnership and terms of the partnership agreement as to the control over the management of the project were the requirements of KDC.
The Retreat Avenue property is currently being used as a parking lot, no building has been constructed thereon and no plans are current for the building of the medical office condominium building and no condominium units have been sold at this property. The transfer of the Retreat Avenue property from the corporation to the general partnership left the corporation with no assets and it was eventually legislated out of existence.
From the date of the contract until October 1, 1986, SPG carried on all of the work required of it in a satisfactory manner. Prior to October 1, 1986 SPG was notified by the corporation that it was going to cease further work on the project as of said date. SPG made no demands for fees after being notified of the cessation of the project and no further work was done on the premises toward development of the project by SPG or the corporation after October, 1986.
While the corporation was in existence the shareholders had entered into a shareholders' agreement dated March 31, 1986 which provided among other things that there would be equal ownership by the shareholders of the shares of the company and an equal allocation of the profits and losses of the company and that it was the intention of the shareholders that no one of them was to assume a substantially more active role than any other of CT Page 473 them in the construction sale or leasing of the property.
On or about April 10, 1989 SPG notified the corporation that it was willing to resume its duties under the agreement, although at this time it had been for some time fully aware that the corporation had been negotiating with KDC and that the property had been transferred.
This action was commenced by the plaintiffs on or about September 12, 1989. The original complaint was amended on or about June 21, 1990. This amended complaint is brought in five counts. The first count seeks recovery of the balance of the consulting fee, plus five percent of the net cash flow profit and management fee. This count is addressed to the corporation. The second count, addressed to the corporation and the partnership alleges that the corporation fraudulently transferred the Retreat Avenue property to the partnership. The third count, addressed to Shelton and the partnership alleges that Shelton and the partnership intentionally interfered with the agreement between SPG and the corporation. The fourth count, addressed to Shelton, seeks to pierce the corporate veil seeking damages from Shelton for the corporation's alleged breach of contract. The fifth count addressed to all defendants alleges a violation of the Unfair Trade Practices Act, Conn. Gen. Stats. 42-110a.
The plaintiff maintains in the first count that the cessation of the project in October of 1986 was on a temporary basis and that resumption of the work on the project ensued thereby entitling the plaintiff to fees in accordance with paragraph 3, subsection C of the contract, and that the plaintiff was ready, willing and able to perform the services in accordance with the contract.
As to the second count, the plaintiff alleges that the corporation in acting through Shelton transferred the real estate to the partnership with the intent of avoiding the plaintiff's debt or hindering its collection and that the partnership in accepting the property, Shelton being a general partner of same, knowingly, aided, abetted and conspired with the corporation and Shelton and that their acts deprived the corporation of sufficient means to satisfy its indebtedness to the plaintiff. CT Page 474
In the third count, the plaintiff maintains that since Shelton was a general partner of the partnership and president of the corporation and had knowledge of the agreement between the corporation and plaintiff, by transferring the real estate to Shelton and the partnership he and the partnership intentionally interfered with the performance of the agreement and that the wrongful acts of these parties resulted in refusal of the plaintiff's services causing damages and loss.
In the fourth count the allegation is that Shelton, who signed the agreements between plaintiff and the corporation and the transfer of real estate between the corporation and the partnership, controlled the corporation to such an extent that the corporate veil should be pierced and he should be liable for the actions of the corporation.
The fifth count is self-explanatory with the plaintiffs alleging that all the prior allegations constitute an unfair practice under Conn. Gen. Stats. 42-110a et seq.
The defendants deny the allegations of the plaintiff.
The court, having heard the parties and examined the briefs, the exhibits and the pleadings in this case, is of the opinion that the plaintiffs have failed to meet their burden of proof with respect to each of the five counts. The court finds that the project ceased in October of 1986 as a result of circumstances beyond the corporation's control. Despite the admitted good faith efforts of the plaintiff over a period of eight months, not one condominium was sold. The Hartford Hospital was building a medical office building at 85 Seymour Street appealing to the same market as the corporation, the economy had taken an adverse turn and the corporation was faced with the continuing costs of the plaintiff and the various engineering, etc. expenses as well as the interest on its mortgage. The plaintiff was aware of these conditions and made no claims against the corporation when the project ceased. The corporation, although making efforts to realize on its investment by looking into other uses for its property, e.g., a medical hotel, with no greater success than before, finally, some 18 months later, was forced by circumstances to sell the property to a third party in its entirety. CT Page 475
The court is of the opinion that the cessation of the project as originally begun was permanent and not temporary and that in fact the second sentence of paragraph 3 controls. There was no attempt to avoid debts. Shelton did not have complete control over the corporation and cannot be held liable for its action. The control was divided equally between Shelton and his equal stockholder, although he spoke for the corporation as its president. There was no breach of contract. The corporation did the best it could to save its investment. The plaintiff was aware of the adverse circumstances and made no claim until April 10, 1989, although it knew of the negotiations with Konover. The land was sold to a third party in a true sense. Although Shelton and Shub had been stockholders of the corporation and were now general partners, their interests in the transaction had been reduced by fifty percent and they gave up all control over the new entity. Thus, this court finds that there is no breach of contract by the defendants and no conspiracy to enter into a fraudulent transfer. The court also finds that there is no violation of the Connecticut Unfair Trade Practices Act.
Judgment may enter for the defendants on all counts.
Robert J. Hale State Trial Referee